UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
NINGBO MIZHIHE I&E CO., LTD.,                            :
                                                         :
                              Plaintiff,                 :   **ORDER GRANTING MOTION TO**
           -against-                                     :   **DISMISS COUNTERCLAIMS**
                                                         :
DOES 1-200; DRESHOW; 4MEMORYS; DENG                      :   19 Civ. 6655 (AKH)
KAI, *et al.*,                                           :
                                                         :
                              Defendants.                :
-------------------------------------------------------------- X
ALVIN K. HELLERSTEIN, U.S.D.J.:

        On July 17, 2019, Plaintiff Ningbo Mizhihe I&E Co., Ltd. ("Mizhihe") filed suit against Defendants alleging copyright infringement in violation of 17 U.S.C. § 101, *et seq.*, and related state common law claims.  *See* ECF No. 1.  In short, Plaintiff is a Chinese company that makes children's apparel, bags, and luggage products, which display copyrighted depictions of a unicorn; Plaintiff alleges that Defendants—various entities and individuals—create, market and sell products containing this unicorn design, thus infringing on Plaintiff's copyrights.  *See id*. at ¶¶ 27-41.  Defendants Deng Kai, Dreshow, and 4Memorys (hereinafter, the "Defendants")[1], filed three counterclaims: (1) Plaintiff knowingly misrepresented that Defendants were infringing on Plaintiff's copyrights in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 512(f); (2) Plaintiff made unauthorized use of promotional images owned by Defendants in violation of the Lanham Act, *see* 15 U.S.C. § 1125(a); and (3) Plaintiff used these promotional images in a manner that deceived customers, in violation of New York unfair competition laws.  Now before the Court is Plaintiff's motion to dismiss Defendants' counterclaims for failure to state a claim.  For the reasons that follow, Plaintiff's motion is granted.

---

[1] Defendants state that Deng Kai is the owner of Dreshow and 4Memorys, the latter two being e-commerce stores that sell products at issue in this suit.  *See* First Amended Counterclaim, ECF No. 94, at ¶ 1.

**Factual Background**

The following facts are taken from Defendants' First Amended Counterclaim ("FAC"), ECF No. 94, and materials incorporated therein by reference, drawing all reasonable inferences in favor of the Defendants.  *See, e.g., Patterson v. Diggs*, No. 18 Civ. 3142, 2019 WL 3996493, at *1 (S.D.N.Y. Aug. 23, 2019); *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13 Civ. 7169, 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014).

Deng Kai alleges that he "owns all rights in and to a series of images that he uses on the Dreshow and 4Memorys [] stores … to list certain products for sale" on Amazon.  FCA at ¶ 3.  Defendants refer to the images as the "Unicorn Images," and allege that they have used the Unicorn Images to sell Kai's unicorn-themed goods on Amazon since around October 2017.  *See id.* at ¶¶ 8, 11.  Defendants contend that the "use of the Unicorn Images is exclusive to Defendant Kai who has spent significant resources promoted their use" and that the images are "distinctive" such that purchasers are made aware that the pictured products come from Kai.  *Id.* at ¶¶ 12-13.

A. <u>Plaintiff's Copyrights and the Take-down Notifications</u>

Plaintiff owns two copyrights covering unicorn-related designs, both procured in 2018.  *See* ECF No. 1, at ¶ 27; ECF No. 1-2; FAC at ¶¶ 14-16.  Defendants maintain that the two copyrights are "derivative of other unicorn designs widely available on … ecommerce markets," and that if the "Copyright Office had been made aware of … the preexisting unicorn designs," it "would have rejected Plaintiff's applications."  FAC at ¶¶ 18-23.

In June 2019, Plaintiff submitted multiple "take-down notifications" to Amazon, under the Digital Millennium Copyright Act (the "DMCA"),[2] asserting that some of Defendants' unicorn-related products on that website were infringing on Plaintiff's copyrights.  *Id.* at §§ 24-

---

[2] The DMCA provides, as discussed further *infra*, that "[a]ny person who knowingly materially misrepresents … that material or activity is infringing … shall be liable for any damages."  17 U.S.C. § 512(f).

25. In response, Amazon removed several of Defendants' listings and disabled their online store. *See id*. at ¶¶ 26-28.

   B. <u>Plaintiff's use of the Unicorn Images</u>

Defendants contend that, since June 2019, Plaintiff has sold a unicorn-themed keychain online using one of the Defendant's Unicorn Images. *See id*. at ¶ 33. Plaintiff do not have authorization from Defendants to use the Unicorn Images. *See id*. at ¶ 35. Defendant Kai initiated an intellectual property dispute with Amazon over Plaintiff's use of the images, which resulted in Amazon removing Plaintiff's listing that made use of the Unicorn Images. *See id*. at ¶¶ 36-37; *see also* ECF No. 94-7.

## Procedural History

Plaintiff filed its complaint on July 17, 2019, alleging copyright infringement. *See* ECF No. 1. In October, a certificate of default was entered against Defendants after failing to file an answer. *See* ECF No. 68. In November, Defendants moved to set aside the default and in December I granted Defendants' motion. *See* ECF Nos. 74, 87. Defendants proceeded to file both an answer and counterclaims; the latter were later amended after Plaintiff moved to dismiss. *See* ECF Nos. 77, 78. Plaintiff filed a motion to dismiss the amended counterclaims on February 14, 2020. *See* ECF No. 95.

## Discussion

Under the familiar *Twombly* and *Iqbal* standard, a claim may survive a motion to dismiss under Rule 12(b)(6) only when the claimant has pleaded "enough facts to state a claim to relief that is plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, *i.e.,*, a claim based in "factual content that allows the court to draw the reasonable inference" that non-movant is liable for the claims alleged, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a claim "attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," it is insufficient for a claimant to rely on either "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

### A. Counterclaim I: The DCMA

The DMCA provides in relevant part as follows:

> Any person who knowingly materially misrepresents under this section … that material or activity is infringing …. Shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer … as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f)(1). The DMCA "'governs the means by which copyright holders can notify online service providers that their sites host or provide access to allegedly infringing material,'" and provides that "such notices, commonly referred to as 'takedown notices,' must include, *inter alia*, 'a statement that the complaining party has a *good faith belief* that use of the material in the manner complained of is not authorized by the copyright owner.' *Hosseinzadeh v. Klein*, 276 F.Supp.3d 34, 43 (S.D.N.Y. 2017) (quoting 17 U.S.C. § 512(c)(3)(A)(v)).

Because only "good faith belief" is required, a "copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken." *Id*. at 44. And for similar reasons, it is "self-evident that a statement cannot be a 'misrepresentation' for purposes of [the DMCA] if it is factually accurate." *Id*. at 47; *accord Hughes v. Benjamin*, --- F.3d ---, 20 WL 528704, at *8 (S.D.N.Y. Feb. 3, 2020) (adding that "the same is of course true for statements that are legally accurate"); *see Cabell v. Zimmerman*, 09 Civ. 10134, 2010 WL 996007, at *4 (S.D.N.Y. 2010) ("[A]s a prerequisite to liability under section 512(f) a defendant must have *actual knowledge* that it is making a misrepresentation of fact.").

4

Plaintiff argues that Defendants have failed to plead a claim under the DMCA because (1) Plaintiff accurately represented to Amazon that they held certain copyrights; and (2) Defendants have not alleged facts to support a plausible inference that Plaintiff *knowingly* made a misrepresentation to Amazon.  Pl. Mem., ECF No. 96, at 6-7.  I agree with both points.

To start, Defendants do not dispute that Plaintiff is the owner of the copyrights referenced in the take-down notice to Amazon.  Instead, Defendants focus their energies on their claim that Plaintiff made "misrepresentations *to the U.S. Copyright Office*" (not to Amazon), and that these alleged misrepresentations are "fatal to the ultimate enforceability of the Copyrighted Works."  Def. Opp. Mem., ECF No. 97, at 5-6.  Plaintiff made no misrepresentations to Amazon about the enforceability of their copyrights (indeed, Plaintiff made no representations whatsoever regarding enforceability).  *See* FCA at ¶¶ 24-28; *see id*. at 94-8 (take-down notice).  Defendants will have the chance in due course to raise their argument as to the unenforceability of Plaintiff's copyrights, but as a *defense* to liability, *see, Wireless Ink Corp. v. Facebook, Inc.*, 787 F.Supp.2d 298, 314 (S.D.N.Y. 2011) ("Patent invalidity, if proven, is a … defense to patent infringement), not as a counterclaim cognizable under the DMCA.  Plaintiff reported to Amazon that it owns several copyrights and that Defendants' activity was infringing; this representation was accurate, calling for the dismissal of Defendants' DMCA claim.  *See Hosseinzadeh*, 276 F.Supp.3d at 43; *Hughes*, 20 WL 528704, at *8.

Next, even if it were enough for liability under the DMCA for Plaintiff to have notified Amazon of the existence of certain copyrights that were lawfully secured, there is insufficient material in the pleadings to support the inference that Plaintiff *knew* their copyrights were not enforceable.  *See, e.g., Cabell*, 2010 WL 996007, at *4 ("*actual knowledge*" is needed).

Defendants do not include any allegations as to whether or when Plaintiff was made aware that it (allegedly) was seeking to procure or enforce a copyright for a unicorn design that was already in use. *See Chevrestt v. Am. Media*, 204 F.Supp.3d 629, 632 (S.D.N.Y. 2016) (noting the complaint "contains no factual allegations supporting those conclusions (speculations?), such as showing that [the movant] was confronted or otherwise made aware of its alleged[] misrepresentation," and granting 12(b)(6) motion to dismiss DMCA claim). Rather, Defendants claim that the "unicorn theme elements were all [available] widely online," such that knowledge is imputable to Plaintiff and it can be inferred that Plaintiff "purposefully" hid from the Copyright Office the preexisting materials. FAC at ¶¶ 22-23. But aside from the conclusory allegations as to Plaintiff "knowingly" making misrepresentations, this contention effectively is one accusing Plaintiff of failing to perform an adequate investigation of the available prior art, which sounds merely in negligence. *See Cabell*, 2010 WL 996007, at *4 ("[N]egligence is not the standard for liability under section 512(f).").

In sum, Defendants' counterclaim under the DMCA is dismissed.

B. <u>Counterclaim II: The Lanham Act</u>

Section 43 of the Lanham Act imposes liability on:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which …

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1). This provision "forbids, *inter alia*, 'reverse passing off'—when a producer misrepresents someone else's goods or services as his own.'" *Agence France Presse v.*

6

*Morel*, 769 F.Supp.2d 295, 307 (S.D.N.Y. 2011) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)).

Interpreting the meaning of the statutory language 'origin' and 'goods,' the Supreme Court held that the "most natural understanding of 'origin' of 'goods'——the source of wares——is the producer of the *tangible product sold in the marketplace*." *Dastar*, 539 U.S. at 31 (emphasis added). That is, the origin of goods phrase "refers to the producer of the tangible goods that are *offered for sale*." *Id*. at 37. Here, the good offered for sale was the keychain.

Defendants fail to state a claim under the Lanham Act. Preliminarily, the rights that Defendants seek to vindicate are not at all clearly set forth in the record. Defendants claim that Plaintiff used the Unicorn Images without authorization, but the Unicorn Images were not the "tangible goods … offered for sale," *id*.; *see also Agence*, 769 F.Supp.2d at 307 ("Because photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A)."). Nor do Defendants specify the nature of their rights in the Unicorn Images, aside from claiming they have "rights, title, and interest." FAC at ¶ 46. And while the FAC says Plaintiff used the Unicorn Images to sell an "unauthorized product," *id*. at ¶ 47, Defendants do not claim any right in the actual product (a unicorn-themed keychain), *see* Def. Opp. Mem. at 8, nor do they dispute that Plaintiff produced the keychain, *see* FAC at ¶¶ 33-34. On this uncertain foundation, Defendants argue that "Plaintiff, in utilizing the Keychain Photograph, falsely represented *itself* [that is, Plaintiff,] as the source of the *physical product displayed in the Keychain Photograph*." Def. Opp. Mem. at 9. But Plaintiff *was* the source of the keychain (or at least Defendants do not claim otherwise). At most the source of the keychain was a third party, that is, not Defendants.

7

Shifting gears, Defendants, in the same paragraph of their brief, appear to change their argument: "Plaintiff's use of Defendant Kai's photograph … misrepresented to consumers that the product being ordered from Plaintiff (and not the photograph itself) was sourced from *Defendant Kai* [that is, not from Plaintiff,] when it was not." *Id*. This looks more like a typical "reverse passing off" claim. But the pleadings are too thin to explain how the use of the Unicorn Images——the ownership rights of which are unclear, and the contents of which Defendants do not claim to own——could confuse consumers buying a keychain that Plaintiff in fact made. *Cf. Dastar*, 539 U.S. at 32-33 ("The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers."). That is to say, Defendants do not adequately explain how use of the photographs——again, not the good actually being sold—— would confuse consumers as to the origin of the underlying good for sale——again, the rights of which are owned by Plaintiff, not Defendant. Defendants do not allege, for example, that Plaintiff added a misleading watermark to the images, *see, e.g., Shepard v. European Pressphoto Agency*, 291 F.Supp.3d 465, 468-69 (S.D.N.Y. 2017).[3] And the conclusory assertion in the FAC that the Unicorn Images "have achieved acceptance and recognition with the consuming public," FAC at ¶ 11, absent any identifying mark is too much to stomach given that, *inter alia*, (1) Defendants do not claim to own or manufacture the goods shown in the Unicorn Images, and (2) Defendants base their entire argument of invalidity on the factual allegation that unicorn images of the kind at issue in this case were so widespread at all relevant times that Plaintiff could not surmount the low hurdle to originality in securing a copyright, *see, e.g.,* FAC at ¶ 18. If the latter

---

[3] Defendants cite to, *inter alia*, *Jacinto v. Illinois Tool Works Inc.*, No. 16 Civ. 1704, 2017 WL 4480752 (E.D.N.Y. Oct. 6, 2017) to support the vitality of their Lanham Act claim. *Jacinto* permitted a claim to proceed under Section 43(a) of the Lanham Act, but on grounds that are supportive of the result today: After rejecting movant's argument for dismissal on a different basis, the Court went on to note that "[i]t seems unlikely that plaintiffs will be able to show that there was a likelihood of consumer confusion," given that the products at issue did not "contain any … trademark." *Id*. at *5. The Court allowed the claim to proceed because the movant had not raised this argument.

point is true, then it is a mystery how images of the unicorn products could alert a consumer that Defendants were the true author or otherwise sow confusion. *Cf., e.g., Ward v. Barnes & Noble, Inc.*, 93 F.Supp.3d 193, 208 (S.D.N.Y. 2015) (the "unfair competition claim fails … [because the claimant] does not raise a triable issue of fact as to whether his goods have acquired a secondary meaning among consumers").[4]

In sum, Defendants' counterclaim under the Lanham Act is dismissed.

### C. Counterclaim III: New York Unfair Competition

The standard governing claims under the Lanham Act, discussed *supra*, are "virtually identical" to claims for "unfair competition … under New York common law." *SLY Magazine, LLC v. Weider Publications, LLC*, 529 F.Supp.2d 425, 443 (S.DN.Y. 2007), *aff'd*, 346 F. App'x 721 (2d Cir. 2009). As such, when a party fails to state a claim under the Lanham Act, any parallel claims under New York unfair competition law likewise must fail. *See, e.g., id.* ("Because plaintiff's claims fail under the Lanham Act, these claims necessarily also fail under New York common law."); *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F.Supp.2d 215, 227 (S.D.N.Y. 2010). For the reasons set forth already, Defendants have failed to state a claim under the Lanham Act; accordingly, their claim under New York common law is unsustainable as well. This claim is dismissed.

**Conclusion**

For all the foregoing reasons, Plaintiff's motion to dismiss Defendants' counterclaims is granted. The pleadings in this case are now closed. The parties shall appear for

---

[4] Defendants' claim seems to be, at its core, one for alleged unauthorized copying of the Unicorn Images, and their "recourse for unauthorized copying, whether through a false claim of authorship or a false assertion of license, lies in copyright law, not in trademark," *Agence France Presse v. Morel*, 769 F.Supp.2d 295, 307-08 (S.D.N.Y. 2011); *see also Patterson v. Diggs*, No. 18 Civ. 3142, 2019 WL 3996493, at *6 (S.D.N.Y. Aug. 23, 2019) ("[T]he right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition, and the failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright.").

a status conference on June 26, 2020, at 10:00 a.m., to discuss a schedule for the remainder of the litigation.  The Clerk is directed to terminate the open motion (ECF No. 95).

SO ORDERED.

Dated:       April 30, 2020                     _____/s/_____
               New York, New York                ALVIN K. HELLERSTEIN
                                                                    United States District Judge